STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

|                                                  |   |                          |
|--------------------------------------------------|---|--------------------------|
| In re Omya, Inc. Act 250 Application #1R0271–21   | } | Docket No. 137-8-10 Vtec |

## Decision and Order on Appellant's Motion for Summary Judgment re Party Status

Appellant Omya, Inc. appealed from a decision of the District 1 Environmental Commission, issued on June 2, 2010, and from the District Commission's July 20, 2010 ruling on a motion to alter the June 2, 2010 Decision, solely seeking to challenge certain language used in the Commission's grant of party status to Beverly Peterson. Appellant Omya, Inc. (Omya) is represented by Edward V. Schwiebert, Esq. and David R. Cooper, Esq.; the Vermont Natural Resources Board (NRB) is represented by John H. Hasen, Esq.; and Ms. Beverly Peterson has appeared and represents herself. The Vermont Agency of Natural Resources is represented by Catherine Gjessing, Esq. and Matthew Chapman, Esq., but did not file any memoranda on the present motion.

Appellant has moved for summary judgment. The following facts are undisputed unless otherwise noted.

## Procedural History

On March 10, 2010, Omya applied for an amendment to its Act 250 Land Use Permit #1R0271, governing its mineral processing operations at its Verpol Facility in Pittsford (Florence) Vermont, to allow it to develop a new lined tailings management facility at the Verpol Facility. The District 1 Environmental Commission held a hearing on April 12, 2010, at the commencement of which it made preliminary determinations concerning party status, including to grant party status to Ms. Peterson under Act 250 Criterion 1(B) (water quality related to disposal of wastes). After taking evidence at the

1

hearing and recessing the proceeding pending submission of additional information, the Commission completed its deliberations on June 2, 2010 and issued its Findings of Fact and Decision granting the permit amendment and authorizing Omya to construct Cells 1 and 2 of Phase I of the proposed new lined tailings management facility. On July 20, 2010, the District Commission issued a Memorandum of Decision on Motion to Alter.[1]

Omya filed an appeal, on August 17, 2010, of only that portion of the District Commission's decision characterizing Ms. Peterson as an "adjoining property owner" to the Verpol Facility. Omya specifically did not contest that Ms. Peterson had standing to participate in this matter on the basis that she is a person having a "particularized interest" qualifying her for party status under 10 V.S.A. § 6085(c)(1)(E). No other party appealed any other aspect of the District Commission's decision granting Act 250 Permit Amendment #1R0271–21, and no party sought a stay of the permit pending this appeal; Act 250 Permit Amendment #1R0271–21 therefore is in effect pursuant to the District Commission's decision.

The only issues raised by the Statement of Questions in this matter relate to the District Commission's statements regarding whether Ms. Peterson's property is considered to be "adjoining" the Verpol Facility. Omya has moved for summary judgment seeking a ruling from this Court that Ms. Peterson is not an "adjoining property owner" to the Verpol Facility, or, in the alternative, requesting the Court to vacate those portions of the two decisions concluding that Ms. Peterson is an "adjoining property owner" to the Verpol Facility. The following facts are undisputed unless otherwise noted.[2]

---

[1] The Court has not been provided with a copy of this decision.

[2] The parties filed a stipulated statement of facts signed only by representatives of Omya and the NRB, as Ms. Peterson filed an objection to Fact # 12 as stated in the

2

Factual Background

Omya owns a tract of land in the Florence area of the Town of Pittsford, Vermont, consisting of approximately 385 acres of land on which is located its mineral processing operations, called the Verpol Facility. The Verpol Facility tract is located south of Whipple Hollow Road and west of West Creek Road, which runs in a generally north-south direction through the area. The Verpol Facility tract has been developed pursuant to Act 250 Land Use Permit #1R0271 (the Verpol Facility Permit), issued originally on August 25, 1977.

Omya operates a tailings dewatering facility, entirely on the Verpol Facility tract, that was approved in Act 250 Land Use Permit #1R0271–18 (the eighteenth amendment to the Verpol Facility Permit). The tailings dewatering facility currently reduces the residual water content of the tailing to approximately ±20%. The permit on appeal is the twenty-first amendment to the Verpol Facility Permit, referred to as the "–21 Amendment." Omya applied for the –21 Amendment in order to enable it to construct, entirely on the Verpol Facility tract, a "Tailings Management Facility" to receive and manage the tailings produced as a by-product of Omya's mineral processing operations.

Omya also owns another tract of land in the Florence area of Pittsford, consisting of approximately 350 acres of land, on which is located the so-called Hogback Quarry. The Hogback Quarry tract is located west of West Creek Road and north of North Fire Hill Road, which intersects with Whipple Hollow Road close to West Creek Road. No portion of the Hogback Quarry is located on the Verpol Facility tract. The Hogback Quarry tract has been developed pursuant to Act 250 Land Use Permit #1R0769, issued originally on August 5, 1994 and amended several times since then.

---

proposed stipulation. The contested portions of Fact # 12 are discussed, if at all, in the analysis of the motion issues and are not presented here as undisputed facts.

3

Omya also owns quarry property in Middlebury, Vermont, subject to the Act 250 Land Use Permit #9A0107 series; approximately 80% of the ore processed in the Verpol Facility is quarried from the Middlebury Quarry. Omya also owns quarry property in South Wallingford, Vermont, subject to Act 250 Land Use Permit #1R0347. Together, the Hogback Quarry, Middlebury Quarry, and South Wallingford Quarry may be referred to as "the Quarry tracts" and their respective Act 250 Land Use Permits as "the Quarry Permits." The quarrying activities take place on the Quarry tracts under the Quarry Permits. The quarried ore is processed at the plant on the Verpol Facility tract under the Verpol Facility Permit.

Beverly Peterson owns a three-acre parcel of land on the west side of West Creek Road, located approximately a half mile north of its intersection with Whipple Hollow Road, and therefore a half mile north of the Verpol Facility tract. The Peterson property is bounded on its west by the Hogback Quarry tract, and on its north and south by two small unrelated parcels.

In addition to the Verpol Facility tract and the Hogback Quarry tract, Omya owns thousands of acres of land in Vermont, both in the Town of Pittsford and beyond. Omya either currently utilizes these properties in connection with its mineral extraction and processing operations, such as the Middlebury or South Wallingford Quarries; or Omya retains them because of the minerals they contain; or Omya retains them because of the control and protection they afford to Omya's operations. Several hundred acres, in numerous tracts of varying sizes, are located in Pittsford contiguous to the Verpol Facility tract, the Hogback Quarry tract, or both. Many landowners own parcels of land that adjoin tracts of land owned by Omya in Vermont, including many who own land adjacent to the Verpol Facility tract or to the Hogback Quarry tract, or both.

Motion for Summary Judgment

In the June 2, 2010 District Commission decision on the –21 Amendment, the

4

Commission granted party status to Ms. Peterson under Act 250 Criterion 1B (water quality related to disposal of wastes), pursuant to 10 V.S.A. § 6085(c)(1)(E), as having "demonstrated a "particularized interest" in the potential adverse impacts of the project." The Commission stated that it agreed "that Ms. Peterson has established a particularized interest insofar as her interests in water quality in the groundwater may be affected."

Section 6085(c)(1) of Act 250 establishes the categories of persons who are entitled to party status in proceedings before the district commissions. Id. § 6085(c)(1). A person claiming party status under § 6085(c)(1)(E) must show that he or she has a "particularized interest protected by" Act 250 and that such particularized interest "may be affected by" the act or decision of the district commission. 10 V.S.A. §§ 6085(c)(1)(E), 6085(c)(2)(A), 6085(c)(2)(D)(ii). The district commission is then directed to "restrict the person's participation to only those issues in which the person has demonstrated an interest." Id. § 6085(c)(4).

It does not matter under the current statute whether a person claiming party status under § 6085(c)(1)(E), who has made the requisite showing of a "particularized interest" protected by Act 250 and at issue in the proceeding, is an "adjoining property owner" to the project property or is farther removed from the project property. By allowing "any adjoining property owner or other person" to make the requisite showings, § 6085(c)(1)(E) makes no distinction between the two categories of persons— "other person" or "adjoining property owner"—who might be able to qualify for party status.[3] Section 6085(c)(1)(E) simply makes clear that, regardless of whether or how a

---

[3] Historically, prior to January 31, 2005, Act 250 and the then-Environmental Board Rules did make a distinction between adjoining property owners, who were considered to be parties by right who could request a hearing on an Act 250 application, and other parties, who were allowed to participate only by permission of the Environmental Board. See 10 V.S.A. § 6085(a), (c)(1) (2003); Environmental Board Rule 14(A), (B)

potential party claiming party status received notice of the pending Act 250 application, any "adjoining property owner" or "other person" is entitled to party status who is able to make the requisite showing of a "particularized interest" protected by Act 250 and at issue in the proceeding.

In this de novo appeal, the Court is directed to apply the substantive standards applicable before the tribunal appealed from. V.R.E.C.P. 5. In the determination of Ms. Peterson's party status under 10 V.S.A. § 6085(c)(1)(E), the substantive standards were whether she had "particularized interest protected by" Act 250 and that such particularized interest "may be affected by" the act or decision of the district commission. The District Commission's determination that she met these standards is not in question in this appeal and is not contested either by Omya or by the NRB.

However, the District Commission went on to state what is essentially an advisory opinion about whether Ms. Peterson's property, that adjoins the Hogback Quarry parcel, should be considered to be "adjoining property" to the Verpol Facility. The NRB is correct that this determination was unnecessary to the decision on party status,[4] regardless of whether it is also an incorrect analysis, as the NRB also argues.

In this de novo appeal, applying the substantive standards applicable before the Commission, the Court has "judicial authority only 'to determine actual controversies arising between adverse litigants,' and issuing an advisory opinion . . . would exceed our constitutional mandate." In re S.N., 2007 VT 47, ¶ 9, 181 Vt. 641. Accordingly, the Court must vacate that portion of page 2 of the District Commission decision, addressing whether Ms. Peterson's property is "adjoining" property to the Verpol

---

(available at http://www.nrb.state.vt.us/lup/publications/rules/2003rules.pdf). That distinction was abolished effective January 31, 2005, as is evident in § 6085(c)(1)(E). 2003, No. 115 (Adj. Sess.), § 55.

[4] The Commission's characterization of Ms. Peterson under the heading of "adjoining property owner" may merely have been an unnecessary carryover from boilerplate language used under the prior version of the statute, see n. 3, supra.

Facility, as an impermissible advisory opinion.

Under the current version of the statute, the only need to distinguish 'adjoining property owners' from other persons having standing under the current 'particularized interest' test appears in 10 V.S.A. § 6084. Section 6084(b)(1) requires the district commission to notify, for major applications, "adjoining landowners as deemed appropriate by the district commission" pursuant to the Act 250 Rules, and also to notify "any other person the district commission deems appropriate." To facilitate the district commission's notification process, § 6084(a) requires the applicant to provide a list of adjoining landowners to the district commission. Under that section "[u]pon request and for good cause, the district commission may authorize the applicant to provide a partial list of adjoining landowners" in accordance with the Act 250 Rules. In the present case, Omya's provision to the District Commission of a list of adjoining landowners, and the Commission's notification of whichever adjoining landowners and other persons it "deem[ed] appropriate" presumably already occurred long before the Commission made the party status determination, held the hearing, and issued the decision on appeal; that notification is not at issue in the present appeal.

While the Court understands Omya's desire to know which adjoining landowners to list in future cases, and understands Ms. Peterson's desire to be notified of future Act 250 proceedings involving Omya, the NRB is correct that § 6084(a) and Act 250 Rule 10(F) make ample provision for the District Commission to notify persons who are not adjoiners, and make ample provision for the Commission to authorize an applicant to provide a partial or limited list of adjoiners if appropriate. To determine how those provisions should be implemented in any future case is for the District Commission in the first instance, and is beyond the scope of the appeal in the present case.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant Omya, Inc.'s Motion for Summary Judgment is GRANTED in Part and DENIED in Part, in that once the Commission determined that Ms. Peterson was eligible for party status under § 6085(c)(1)(E), it should not have proceeded to provide an advisory opinion on whether Ms. Peterson also is an "adjoining property owner" to the Verpol Facility, as it is unnecessary to a determination of party status. The Commission's advisory opinion as to Ms. Peterson's adjoining property owner status is HEREBY VACATED, concluding this appeal. The attached copy of page 2 of the District Commission decision shows the language that is being changed or deleted to conform to the decision in this appeal.

Done at Berlin, Vermont, this 28th day of January, 2011.

_____

Merideth Wright
Environmental Judge

8

1. The applicants, by David Cooper, Esq., Mike Laurent, Neal Jordan, David Adilman and Eric Steinhauser.
2. The Town of Pittsford, not represented.
3. The Town Planning Commission, by Don Nickless.
4. The Rutland Regional Planning Commission, not represented.
5. The State of Vermont, Agency of Natural Resources, by Elizabeth Lord, Esq., and James Surwilo.

The following ~~adjoining property owners were~~ person was admitted as ~~parties~~ a party pursuant to 10 V.S.A. § 6085(c)(1)(E) as having demonstrated a "particularized interest" in the potential adverse impacts from the project:

6. Bev Peterson, granted under criterion 1B (water quality related to disposal of wastes). The permittee objected to party status on the grounds that Ms. Peterson is not an adjoiner to the OMYA tract upon which the lined landfill is proposed. Exhibits 23 and 24. RCO, on Ms. Peterson's behalf, filed a rebuttal. Exhibit 22. Having reviewed the filings, ~~the Commission concludes that both OMYA tracts are subject to Act 250 jurisdiction and both involve integral components of the same OMYA processing operation. Accordingly~~, the Commission finds that Ms. Peterson ~~is an "adjoiner" pursuant to the statute. We note in passing that even if the Commission concluded that Ms. Peterson was not an "adjoiner" with regard to this project, we agree with RCO that Ms. Peterson~~ has established a particularized interest insofar as her interests in water quality in the groundwater may be affected.

The following persons or entities were admitted as parties, as indicated, pursuant to 10 V.S.A. § 6085 (c)(1)(E) and Act 250 Rule 14:

7. Residents Concerned About OMYA ("RCO"), by Sheryl Dickey, Chris Davis, and Clare Cragan under criterion 1B (water quality related to disposal of wastes). See Exhibit 21. The permittee objected to party status on various grounds recited in Exhibits 23 and 24. RCO filed a rebuttal. Exhibit 22. Having reviewed the filings, the Commission concludes that RCO has established sufficient grounds for party status inasmuch as it has one or more members who may be directly affected by groundwater quality. Accordingly, the objection to RCO is overruled and the preliminary party status grant to RCO is now final.

There were no other requests for party status.

Pursuant to 10 V.S.A. §60859(c)(2), the District Commission made preliminary determinations concerning party status at the commencement of the hearing on this application. Prior to the completion of deliberations, the District Commission re-